UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK                         (For Online Publication Only)
-----------------------------------------------------------------------X

UNITED STATES OF AMERICA,

 

-against-

FLEUR WILLIAMS,

                                 Defendant.
-----------------------------------------------------------------------X

**MEMORANDUM & ORDER**
23-cr-00252-JMA-1

**FILED**
**CLERK**

10:11 am, Sep 03, 2024

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**AZRACK, United States District Judge:**

Defendant Fleur Williams moves, pro se under 18 U.S.C. § 3582(c)(2) and U.S.S.G. § 1B1.10, for a two-point reduction in his sentence based on the "zero-point offender" amendment to the U.S. Sentencing Guidelines ("Guidelines").[1]  (ECF No. 29.)  The Government opposed the motion.  (ECF No. 31.)  Mr. Williams never replied.  For the below reasons, the motion is denied.

## I.      BACKGROUND

Between April and September 2020, Mr. Williams engaged in a scheme to fraudulently obtain more than $281,000 in PPP and EIDL loans from the United States Small Business Administration ("SBA").  (ECF No. 18, at ¶ 1 ("PSR").)  On August 2, 2023, Mr. Williams pleaded guilty before United States Magistrate Judge Lee G. Dunst to a single-count indictment pursuant to a plea agreement.  (Id.)  The indictment charged Mr. Williams with conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 and 18 U.S.C. § 1343.  (Id.)

---

[1]      Because Mr. Williams is proceeding pro se, the Court construes his motion in the light most favorable to him. See Rahmankulov v. United States, 2023 WL 3303949, at *1 (S.D.N.Y. May 8, 2023) (holding courts must "construe pro se pleadings liberally and interpret them 'to raise the strongest arguments they suggest'") (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)) (emphasis in original) (internal quotation marks and citations omitted).  Read literally, however, Mr. Williams's form motion seeks an amended sentence that would increase his term of imprisonment from 18 to 21 months.  (ECF No. 29 (acknowledging his current 18-month prison term but requesting a resentence at the "low end (21 months)" of the amended United States Sentencing Guidelines range).)

On March 29, 2020, the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") was enacted to attempt to provide emergency financial assistance to businesses that were shuttered in the name of public safety. (Id. ¶¶ 4–5.) Under the CARES Act, funds were allocated for the issuance of forgivable loans to small businesses for job retention and payroll related expenses via the PPP. (Id. ¶ 5.) The PPP allowed qualifying small businesses to receive unsecured loans to address business expenses such as payroll, rent, mortgage related payments, and utilities. (Id.) If the PPP funds were used for their intended purposes and in accordance with the program's terms, the loans would be forgiven. (Id.) The PPP program was overseen by SBA, and various financial institutions received and processed the PPP loan applications—which if approved, would then be funded by the lenders. (Id.) The amount of the loans was determined by a formula which required applicants to truthfully report information such as the number of employees and payroll costs, as well as provide corroborating documentation. (Id. ¶¶ 5, 8.) In addition to the PPP, the CARES Act also provided funding for the EIDL program—a SBA program designed to provide up to $2 million in loans to eligible small businesses that experienced financial disruption due to the COVID-19 pandemic. (Id. ¶ 6.) Like the PPP program, the EIDL program required applicants to truthfully report information—to the SBA through an online portal—related to a business's operations for the preceding twelve-month period. (Id. ¶¶ 6, 8.) Like the PPP program, the EIDL program funds could only be used for limited, business-related purposes. (Id.)

Operating from Oceanside, New York (among other places)—and against the backdrop of an unprecedented public health crisis—Mr. Williams elected to enter a conspiracy to steal approximately $281,532 by submitting fraudulent online PPP and EIDL applications for two entities that he operated, each of which engaged in the "flipping" of residential homes. (Id. ¶¶ 7–8, 56.) Collectively, Mr. Williams's three fraudulent submissions to the SBA and two financial institutions that administered the PPP and EIDL programs misrepresented: (1) the identity of the

2

loan applicant, (2) the number of employees, (3) the revenue and payrolls of Mr. Williams's entities, and (4) the intended use of the loan proceeds. (Id. ¶ 8.) Between April and September 2020, based upon these lies, the SBA and the financial institutions issued around $281,532 to Mr. Williams's two entities. (Id. ¶ 9.) Mr. Williams used these illicitly obtained proceeds to enrich himself and to make extravagant purchases, including the purchase of an approximately $19,000 luxury watch in Garden City, New York. (Id.)

Relevant here, Mr. Williams's PSR determined that he had one criminal history point— which established a Criminal History Category of I and a Guidelines range of 27–33 months' imprisonment.[2] (Id. ¶¶ 28–29, 67.) On January 17, 2024, this Court sentenced Mr. Williams to a term of 18 months' imprisonment and two years' supervised release. (ECF No. 22.) Notably, the 18-month term of imprisonment was 9 months below the low-end of the then-applicable Guidelines range, see PSR ¶ 70, and 19 months below the waiver in Mr. Williams's plea agreement—which forbade him from "fil[ing] an appeal or otherwise challeng[ing], by petition under 28 U.S.C. §2255 or any other provision, the conviction or sentence in the event that the Court imposes a term of imprisonment of 37 months or below." (Ex. A, at ¶ 4, ECF No. 31-1.)

## II.    DISCUSSION

Under 18 U.S.C. § 3582(c)(2), "a federal court may reduce a defendant's sentence if the defendant was originally sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission when that modification is made

---

[2]    Specifically, the PSR determined that Mr. Williams's Criminal History score was one as a result of a May 4, 2011, sentence of one day custody and one year probation that was imposed upon him in a Georgia State Court, based upon his conviction for Driving Under the Influence of Alcohol ("DUI"). (See U.S.S.G. § 4A1.1(c); see also PSR at ¶ 28.) The relevant United States Sentencing Guideline, §4A1.2(e)(2), provides that "any prior sentence that was imposed within ten years of the defendant's commencement of the instant offense is counted" to determine the defendant's Criminal History Category. See U.S.S.G. § 4A1.2(e)(2). On August 2, 2023, during his guilty plea, Mr. Williams expressly allocuted that he commenced his PPP and EIDL wire fraud conspiracy within approximately eight years and ten months of his DUI conviction, stating "between approximately April 1[], 2020, and September 30, 2020… I agreed … to engage in a scheme to defraud the Small Business Administration and financial institutions…." (Ex. B, at 25:7–19, ECF No. 31-2.)

retroactive." United States v. Torres, 2024 WL 621554, at *1 (S.D.N.Y. Feb. 14, 2024) (Chin, J.) (citing United States v. Martin, 974 F.3d 124, 136, 139 (2d Cir. 2020)). To do so, the court must first "determine the amended guideline range that would have been applicable to the defendant if [the amendment] had been in effect at the time the defendant was sentenced." United States v. Zapatero, 961 F.3d 123, 127 (2d Cir. 2020) (quoting U.S.S.G. § 1B1.1Q(b)(1)). If the defendant is eligible for a sentence reduction, "'a court may reduce the term of imprisonment after considering the factors set forth in section 3553(a) and if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission,' which are contained in U.S.S.G. § 1B1.10." Torres, 2024 WL 621554, at *1 (quoting Martin, 974 F.3d at 136).

Section 1B1.10(a)(2)(B) provides, however, that "[a] reduction in the defendant's term of imprisonment ... is not authorized under 18 U.S.C. § 3582(c)(2) if ... [the amendment] does not have the effect of lowering the defendant's applicable guideline range." U.S.S.G. § 1B1.10(a)(2)(B). And § 1B1.10(b)(2)(A) provides that, with an exception not relevant here, "the court shall not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) ... to a term that is less than the minimum of the amended guideline range."[3] Id. § 1B1.10(b)(2)(A). "Thus, if a defendant was originally sentenced to a term of imprisonment that falls below the low end of the amended Guidelines range, that defendant is ineligible for a reduction under Section 3582(c)(2)." United States v. Ross, 2024 WL 149130, at *1 (S.D.N.Y. Jan. 12, 2024).

Amendment 821 to the Sentencing Guidelines went into effect on November 1, 2023, and applies retroactively. See U.S.S.G. § 1B1.10(d). Part A of the Amendment addresses "status

---

[3]     "The sole exception provided by the Sentencing Guidelines is for defendants who were sentenced to less than the guideline range 'pursuant to a government motion to reflect the defendant's substantial assistance to authorities,' in which case 'a reduction comparably less than the amended guideline range ... may be appropriate.'" United States v. Wallace, No. 22-cr-153, ECF No. 62, at 3 (E.D.N.Y. Apr. 30, 2024) (citing U.S.S.G. § 1B1.10(b)(2)(B)) (denying motion for a sentence reduction where the defendant's sentence was already at the low end of the amended guidelines). This exception is inapplicable because the Government did not file such a substantial assistance motion in this case. (ECF No. 31, at 2 n.2.) Nor did Mr. Williams qualify for a "safety valve" reduction. (See PSR, at ¶ 28.)

4

points," which refer to two additional points added to an offender's sentence if the offender committed the instant federal offense while still serving a sentence in another case. United States v. Tejeda, 2024 WL 1676329, at *2 n.1 (S.D.N.Y. Apr. 18, 2024). The Amendment decreases status points by one point for offenders with seven or more criminal history points and eliminates them altogether for offenders with six or less criminal history points.[4] See U.S.S.G. § 4A1.1(e). Part B of the Amendment provides a decrease of two offense levels for "Zero-Point Offenders" (offenders who have no criminal history points) and whose offense did not involve specific aggravating factors.[5] Id. § 4C1.1.

Turning to the instant motion, because Mr. Williams had more than zero criminal history points, Part B of the Amendment does not apply. Part A of the Amendment does not apply either. No "status points" were assigned to Mr. Williams at sentencing; indeed, the Court sentenced Mr. Williams based on the lowest possible criminal history category—Category I. Therefore, Mr. Williams is ineligible for a modification of sentence.[6]

---

[4]    Because no "status points" were assigned to Mr. Williams at sentencing, Part A does not apply. See U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28,254, 28,272 (effective Nov. 1, 2023) (defining "status points" as "the additional criminal history points given to offenders for the fact of having committed the instant offense while under a criminal justice sentence" (emphasis added)); see also PSR ¶ 28.

[5]    Under § 4C1.1, a defendant with zero criminal history points is eligible for a two-level reduction to his offense level if: (i) he did not receive an adjustment under § 3A1.4 (Terrorism); (ii) he did not use violence or credible threats of violence in connection with the offense; (iii) the offense did not result in death or serious bodily injury; (iv) the offense is not a sex offense; (v) he did not personally cause substantial financial hardship; (vi) he did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon; (vii) the offense is not covered by § 2H1.1 (Offenses Involving Individual Rights; (viii) he did not receive an adjustment under § 3A1.1 (Hate Crime Motivation or Vulnerable Victim) or § 3A1.5 (Serious Human Rights Offense); and (ix) he did not receive an adjustment under § 3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848. See U.S.S.G. § 4C1.1(a)(2)–(10).

[6]    Another reason for Mr. Williams's ineligibility bears separate remark. Section 1B1.10(b)(2)(A) provides that, with an exception not relevant here, "the court shall not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) ... to a term that is less than the minimum of the amended guideline range." Id. § 1B1.10(b)(2)(A). Here, Mr. Williams was sentenced to a term of imprisonment (18 months) that is less than the low-end of the amended Guidelines range that would apply if he qualified as a zero-point offender (21–27 months). (ECF No. 31, at 3 (explaining amended guidelines calculation).) Thus, Mr. Williams would be ineligible for a sentence reduction even if the Court assumed the "zero-point offender" provision resulted in a reduction to Mr. Williams's Guidelines calculation. See Ross, 2024 WL 149130, at *1 ("Thus, if a defendant was originally sentenced to a term of

Because Mr. Williams is ineligible for a sentence reduction, this Court need not analyze the factors set forth in 18 U.S.C. § 3553(a). See United States v. Garcia, 2024 WL 532447, at *2 (S.D.N.Y. Feb. 9, 2024); see also Ross, 2024 WL 149130, at *2 (declining to analyze Section 3353(a) factors where criminal history calculation alone established that defendant was ineligible for a sentence reduction).  But even if the Court assumed that the "zero-point offender" provision resulted in a reduction to Mr. Williams's Guidelines calculation, which it does not, a sentence reduction in this case would be "[in]consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2).  Upon re-reviewing the record of this case and carefully "consider[ing] anew all of the § 3553(a) factors that it originally considered at sentencing," United States v. Vela, 2024 WL 1621109, at *1 (S.D.N.Y. Apr. 15, 2024), the 18-month sentence that the Court imposed on Mr. Williams "continues to be the least restrictive sentence necessary to satisfy the statutory purposes of sentencing."  Id.; see also 18 U.S.C. § 3553(a).

### III.   CONCLUSION

For the above reasons, under Fed. R. Crim. P. 37(a), the Court DENIES Mr. Williams's motion for a sentence reduction under 18 U.S.C. § 3582(c)(2) and U.S.S.G. § 1B1.10.  The Clerk of Court is respectfully directed to close ECF No. 29.  The Court further certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).  The Clerk of Court is also respectfully directed to mail a copy of this Order to Mr. Williams at his address of record.

---

imprisonment that falls below the low end of the amended Guidelines range, that defendant is ineligible for a reduction under Section 3582(c)(2)."); see also Dillon v. United States, 560 U.S. 817, 827 (2010).  For this reason, the Court need not address the Government's alternate argument that Mr. Williams's collateral attack waiver in his plea agreement also bars his present sentence reduction claim.  (ECF No. 31, at 6.)

**SO ORDERED.**

Dated:   September 3, 2024
            Central Islip, New York

/s/ JMA
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE
